1   Jody Goodman (DC Bar No. 404879)
    Andrew Hudson (DC Bar No. 996294)
2   Federal Trade Commission
    600 Pennsylvania Ave., NW, Mailstop CC-8528
3   Washington, DC 20580
    (202) 326-3096 / jgoodman1@ftc.gov
4   (202) 326-2213 / ahudson@ftc.gov
    (202) 326-3395 (fax)
5
    Attorneys for Plaintiff
6   Federal Trade Commission

FILED ___   X LODGED
___ RECEIVED ___ COPY

OCT 3 2016

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

SEALED

7
8                  **IN THE UNITED STATES DISTRICT COURT**
                      **FOR THE DISTRICT OF ARIZONA**

9    **Federal Trade Commission,**

10                  Plaintiff,                          **Filed Under Seal**

11          vs.
                                                        CV-16-3353-PHX-DJH
12   **Advertising Strategies, LLC**, an Arizona limited liability
     company,                                           Case No.
13
14   **Internet Advertising Solutions, LLC**, an Arizona limited
     liability company,                                 **COMPLAINT FOR**
                                                        **PERMANENT**
15   **Internet Resource Group, Inc.**, an Arizona corporation,   **INJUNCTION AND**
                                                        **OTHER EQUITABLE**
16   **Network Advertising Systems, LLC**, an Arizona limited      **RELIEF**
     liability company,
17
18   **Network Professional Systems, LLC**, an Arizona limited
     liability company,
19
20   **Network Solutions Group, Inc.**, an Arizona corporation,

21   **Matthew Rodriguez**, individually and as an officer,
     member, and/or manager of Advertising Strategies, LLC
     and Network Advertising Systems, LLC,
22
23   **Susan Marie Rodriguez**, individually and as an officer,
     member, and/or manager of Internet Advertising Solutions,
24   LLC and Internet Resource Group, Inc., and

25   **William Matthew Whitley**, a/k/a Matt Whitley,
     individually and as an officer, member, and/or manager of
26   Network Professional Systems, LLC and Network Solutions
     Group, Inc.,
27
                    Defendants.
28

                                   1

1    Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

2        1.    The FTC brings this action under Section 13(b) and of the Federal Trade

3    Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Telemarketing and Consumer

4    Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, as

5    amended, to obtain temporary, preliminary, and permanent injunctive relief, rescission or

6    reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten

7    monies, and other equitable relief for Defendants' acts or practices in violation of Section

8    5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Telemarketing Sales

9    Rule ("TSR"), 16 C.F.R. Part 310, as amended.

10   **JURISDICTION AND VENUE**

11       2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,

12   1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 6102(c), and 6105(b).

13       3.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), (b)(3),

14   (c)(1), and (c)(2), and 15 U.S.C. § 53(b).

15   **SUMMARY OF THE CASE**

16       4.    Defendants operate a fraudulent telemarketing scheme that bilks consumers

17   by offering bogus "risk-free" money-making opportunities.  Defendants represent to their

18   consumer victims—many of whom are elderly or veterans—that the consumers will earn

19   substantial income through websites to be owned or invested in by the consumers.

20   Defendants collect hundreds or thousands of dollars from each victim, string their victims

21   along with bogus updates about the status of the victims' investment earnings, and

22   ultimately cut off communications without providing the promised investment returns.

23       5.    Defendants have charged individual consumers substantial amounts of

24   money, ranging from several hundred to more than $20,000, with total consumer injury

25   exceeding $9,000,000.

26       6.    Defendants' deceptive sales pitches violate the FTC Act and the TSR.  In

27   addition, Defendants violate the TSR by calling individuals who have listed their phone

28   numbers on the Do Not Call registry.

**PLAINTIFF**

7.    The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108, as amended.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

8.    The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), 6102(c), and 6105(b).

**DEFENDANTS**

9.    Defendant **Advertising Strategies, LLC** ("AdStrat") is an Arizona limited liability company with a registered business address of 3039 W. Peoria Ave. #474, Phoenix, Arizona 85029.  AdStrat transacts or has transacted business in this district and throughout the United States.

10.    Defendant **Internet Advertising Solutions, LLC** ("AdSolutions") is an Arizona limited liability company with a registered business address of 1414 W. Broadway Road #117, Tempe, Arizona 85282.  AdSolutions transacts or has transacted business in this district and throughout the United States.

11.    Defendant **Internet Resource Group, Inc.** ("Resource") is or was an Arizona corporation with a registered business address of 4112 East Indian School Road, Phoenix, Arizona.  Resource transacts or has transacted business in this district and throughout the United States.

12.    Defendant **Network Advertising Systems, LLC** ("NetASystems") is an Arizona limited liability company with a registered business address of 1710 East Indian

1  School Road #210, Phoenix, Arizona.  NetASystems transacts or has transacted business

2  in this district and throughout the United States.

3        13.   Defendant **Network Professional Systems, LLC** ("NetPSystems") is an

4  Arizona limited liability company with a registered business address of 2925 E Riggs

5  Road, Suite 245, Chandler, Arizona 85249.  NetPSystems transacts or has transacted

6  business in this district and throughout the United States.

7        14.   Defendant **Network Solutions Group, Inc.** ("NetSolutions") is or was an

8  Arizona corporation with a registered business address of 2925 E Riggs Road, Suite #8-

9  245, Chandler, Arizona 85249.  NetSolutions transacts or has transacted business in this

10  district and throughout the United States.

11        15.   Defendant **Matthew Rodriguez** ("M. Rodriguez") is an Arizona resident.

12  He is a member and manager of AdStrat and NetASystems.  During all or part of the

13  times material to this Complaint, acting alone or in concert with others, he has

14  formulated, directed, controlled, had the authority to control, or participated in the acts

15  and practices set forth in this Complaint.  M. Rodriguez resides in this district and, in

16  connection with the matters alleged herein, transacts or has transacted business in this

17  district and throughout the United States.

18        16.   Defendant **Susan Marie Rodriguez** ("S. Rodriguez") is an Arizona

19  resident.  She is a member and manager of AdSolutions and a director of Resource.

20  During all or part of the times material to this Complaint, acting alone or in concert with

21  others, she has formulated, directed, controlled, had the authority to control, or

22  participated in the acts and practices set forth in this Complaint.  S. Rodriguez resides in

23  this district and, in connection with the matters alleged herein, transacts or has transacted

24  business in this district and throughout the United States.

25        17.   Defendant **William Matthew Whitley**, a/k/a Matt Whitley ("Whitley") is

26  an Arizona resident.  He is a member and manager of NetPSystems and a director of

27  NetSolutions.  During all or part of the times material to this Complaint, acting alone or

28  in concert with others, he has formulated, directed, controlled, had the authority to

4

1  control, or participated in the acts and practices set forth in this Complaint. Whitley

2  resides in this district and, in connection with the matters alleged herein, transacts or has

3  transacted business in this district and throughout the United States.

4  **COMMON ENTERPRISE**

5     18.   Corporate Defendants AdStrat, AdSolutions, Resource, NetPSystems,

6  NetASystems, and NetSolutions have operated as a common enterprise while engaging in

7  the deceptive acts and practices and other violations of law alleged in the Complaint.

8  Defendants have conducted the business practices described herein through an

9  interrelated network of companies that have a common business purpose, business

10  functions, employees, and office locations, commingled funds or shared profits from the

11  scheme, and are all controlled by the three individual Defendants. Because the Corporate

12  Defendants have operated as a common enterprise, each of them is jointly and severally

13  liable for the acts and practices alleged below. Defendants M. Rodriguez, S. Rodriguez,

14  and Whitley have formulated, directed, controlled, had the authority to control, or

15  participated in the acts and practices of the Corporate Defendants that constitute the

16  common enterprise.

17  **COMMERCE**

18     19.   At all times material to this Complaint, Defendants have maintained a

19  substantial course of trade in or affecting commerce, as "commerce" is defined in Section

20  4 of the FTC Act, 15 U.S.C. § 44.

21  **DEFENDANTS' BUSINESS PRACTICES**

22     20.   Since at least 2011, Defendants have marketed and sold purported money-

23  making opportunities to consumers throughout the United States. Defendants typically

24  contact consumers through outbound telemarketing sales calls. In numerous instances,

25  Defendants' telemarketers have initiated outbound telemarketing sales calls to telephone

26  numbers on the National Do Not Call Registry. In some cases, Defendants' brochures

27  direct consumers to call Defendants' telemarketers. Consumers may also learn of

28  Defendants through internet advertisements.

21.     In the telemarketing calls, Defendants offer consumers an opportunity to share in revenue from e-commerce (*i.e.*, trading or facilitation of trading in goods or services using computer networks, such as the internet) websites.

22.     The details of the offer differ, but Defendants routinely describe it as an offer to purchase or invest in e-commerce websites, or websites that direct traffic to e-commerce websites such as Amazon.com.  Defendants' telemarketers typically promise consumers that they will earn money based on sales at the e-commerce websites and/or traffic through their websites to the e-commerce websites.  Defendants promise consumers substantial returns or income, such as hundreds or thousands of dollars every quarter.

23.     Defendants' telemarketers typically assure consumers that they do not need to do anything to earn the promised returns or income other than make a payment to join the program (whether framed as a purchase of websites, an investment in websites or a web-based business, or otherwise).

24.     Defendants also typically promise consumers that the purported money-making program is "risk-free," or that that it includes a "100% money back guarantee."

25.     After eliciting a hefty payment from consumers, Defendants frequently mail them a package that often includes a letter, glossy brochures, and itemized bills. These documents typically include references to business coaching or advertising services and often direct consumers to complete certain tasks related to advertising. Defendants, however, routinely tell consumers that they can ignore these statements or tasks, or that the representations in the written materials do not apply to the consumers.

26.     Defendants frequently contact consumers again after the initial payment and persuade them to pay more money, promising that doing so will yield greater returns. In some instances, Defendants convince consumers who initially paid hundreds of dollars to pay thousands of dollars more.

27.     Defendants often tell consumers that in order to receive their income or returns, the consumers must sign forms that appear to be itemized bills—frequently for

1   purported advertising services or websites.  In small print beneath the signature line, the

2   forms falsely state that the consumer has already received services in the amount shown.

3       28.   Defendants bill consumers' credit cards, sometimes offering to help

4   consumers move the resulting balances to new credit accounts that offer temporary low or

5   zero-interest balance transfers.  Defendants often assure their consumer victims that the

6   consumers will be able to pay off the balance in full with their first quarterly payment,

7   before the balance begins accruing interest.

8       29.   After a consumer authorizes payment, Defendants typically respond to

9   telephone calls from that consumer for approximately ninety (90) days.  During this time,

10  Defendants typically claim that the consumer has an "account" in which her earnings are

11  accumulating.  Defendants often promise the consumer that the funds in the consumer's

12  account will be paid to the consumer at the end of the quarter.

13      30.   When consumers become suspicious about the status of their investment or

14  payment, Defendants routinely employ stall tactics to dissuade the consumers from

15  disputing the charges to their credit card accounts.  They often offer various excuses for a

16  "delay" in issuing the quarterly payment and reassure consumers that the payment will be

17  sent out soon.  After approximately ninety (90) days from a consumer's payment,

18  Defendants typically cut off all contact and cease answering the consumer's calls.

19      31.   Defendants seem to be targeting older consumers who may be less familiar

20  with e-commerce, thus less likely to realize that the marketed "opportunity" is a scam.

21  Many of Defendants' victims are veterans.

22      32.   Defendants use mail-forwarding services to disguise their location, and

23  have changed the name and mailing address under which they operate, and their physical

24  office location, to avoid detection.  For example, in 2013, the Arizona Attorney General's

25  Office obtained the lease agreement for 4112 E. Indian School Rd., Phoenix, Arizona,

26  which was the office of Defendant Internet Advertising Solutions.  Defendant S.

27  Rodriguez had signed that lease agreement.  When the Attorney General summoned S.

28

1    Rodriguez to appear and testify about the business at that address, Defendants quickly

2    closed their office at that location, and S. Rodriguez failed to appear and testify.

3        33.    The d/b/as Defendants have used in connection with the acts and practices

4    discussed in this Complaint include the following, among others:  WyzeMoney,  Prime

5    Cash, and BuildingMoney.cash.

6        34.    Consumers who pay for Defendants' purported money-making

7    opportunities typically do not receive the promised returns, nor do they receive their

8    money back.

9        35.    Defendants have victimized numerous consumers throughout the United

10   States and caused an estimated loss to consumers of more than $9,000,000.

11                          **VIOLATIONS OF THE FTC ACT**

12       36.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or

13   deceptive acts or practices in or affecting commerce."

14       37.    Misrepresentations or deceptive omissions of material fact constitute

15   deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

16                                   **COUNT I**

17                  **False or Unsubstantiated Earning Claims**

18       38.    In numerous instances in connection with the advertising, marketing,

19   promotion, offering for sale, or sale of their purported money-making opportunities,

20   Defendants have represented, directly or indirectly, expressly or by implication, that

21   purchasers of their purported money-making opportunities would earn or were likely to

22   earn substantial income, such as hundreds or thousands of dollars each quarter.

23       39.    Defendants' representations set forth in Paragraph 38 of this Complaint are

24   false, misleading, and/or were not substantiated at the time the representations were made

25   because consumers who purchased Defendants' purported money-making opportunities

26   were not likely to earn substantial income, such as hundreds or thousands of dollars each

27   quarter, or any income at all, and in truth and in fact, in numerous instances in which

28   Defendants have made the representations set forth in Paragraph 38 of this Complaint,

8

1   consumers who purchased Defendants' purported money-making opportunities did not

2   earn substantial income, such as hundreds or thousands of dollars each quarter, or any

3   income at all.

4       40.     Therefore, Defendants' representations as set forth in Paragraph 38 of this

5   Complaint are false or misleading and constitute a deceptive act or practice in or affecting

6   commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

7                                  **COUNT II**

8                **False Risk-Free or Money Back Guarantee Claims**

9       41.     In numerous instances in connection with the advertising, marketing,

10  promotion, offering for sale, or sale of Defendants' purported money-making

11  opportunities, Defendants have represented, directly or indirectly, expressly or by

12  implication, that purchase of Defendants' purported money-making opportunities is risk-

13  free or that purchasers receive a 100% money back guarantee.

14      42.     In truth and in fact, in numerous instances in which Defendants have made

15  the representations set forth in Paragraph 41 of this Complaint, consumers who purchased

16  Defendants' purported money-making opportunities lost the money they paid to

17  Defendants or were unable to obtain a refund from Defendants.

18      43.     Therefore, Defendants' representation as set forth in Paragraph 41 of this

19  Complaint is false or misleading and constitutes a deceptive act or practice in or affecting

20  commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

21                          **VIOLATIONS OF THE TSR**

22      44.     Congress directed the FTC to prescribe rules prohibiting abusive and

23  deceptive telemarking acts or practices pursuant to the TSR in 1994. The FTC adopted the

24  original TSR in 1995, extensively amended it in 2003, and amended certain provisions

25  thereafter. 16 C.F.R. Part 310.

26      45.     Defendants are "sellers" or "telemarketers" engaged in "telemarketing" as

27  defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).

28

1       46.     The TSR prohibits any seller or telemarketer from making a false or

2  misleading statement to induce any person to pay for goods or services or to induce a

3  charitable contribution.  16 C.F.R. § 310.3(a)(4).

4       47.     Among other things, the TSR, as amended in 2003, established a "do-not-

5  call" registry, maintained by the Commission (the "National Do Not Call Registry," or

6  "Registry"), of consumers who do not wish to receive certain types of telemarketing

7  calls. Consumers can register their telephone number over the Internet at

8  *www.donotcall.gov*.

9       48.     Since October 17, 2003, sellers and telemarketers have been prohibited

10  from calling numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

11       49.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c) and

12  Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes

13  an unfair or deceptive act or practice in or affecting commerce, in violation of Section

14  5(a) of the FTC Act, 15 U.S.C. § 45(a).

15                        **COUNT III**

16           **Misrepresentations in Violation of the TSR**

17      50.     In numerous instances, in the course of telemarketing their goods and

18  services, Defendants have made false or misleading statements, directly or by

19  implication, to induce consumers to pay for goods or services, including

20  misrepresentations that:  (a) purchasers of Defendants' purported money-making

21  opportunities will earn substantial income, such as hundreds or thousands of dollars each

22  quarter; (b) purchase of Defendants' purported money-making opportunities is risk-free;

23  or (c) purchasers receive a 100% money back guarantee.

24      51.     Defendants' practices, as described above in Paragraph 50 above, are

25  deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(4),

26  and 16 C.F.R. § 310.6(b)(6).

27

28

COUNT IV

**Do Not Call Violations**

52.     In numerous instances, in connection with telemarketing, Defendants have engaged in initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

**CONSUMER INJURY**

53.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

**THE COURT'S POWER TO GRANT RELIEF**

54.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations  of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the TSR, and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

11

1    B.    Enter a permanent injunction to prevent future violations of the FTC Act

2    and the TSR by Defendants;

3    C.    Award such relief as the Court finds necessary to redress injury to

4    consumers resulting from Defendants' violations of the FTC Act and the TSR, including

5    but not limited to, rescission or reformation of contracts, restitution, the refund of monies

6    paid, and the disgorgement of ill-gotten monies; and

7    D.    Award Plaintiff the costs of bringing this action, as well as such other and

8    additional relief as the Court may determine to be just and proper.

9

10                                    Respectfully submitted,

11                                    DAVID C. SHONKA
                                      Acting General Counsel
12

13   Dated:  October 3, 2016
                                      /s/ Jody Goodman
14

15                                    Jody Goodman
                                      Andrew Hudson
16                                    Federal Trade Commission
                                      600 Pennsylvania Ave., NW
                                      Mailstop CC-8528
17                                    Washington, DC 20580
                                      (202) 326-3096 / jgoodman1@ftc.gov
18                                    (202) 326-2213 / ahudson@ftc.gov

19                                    Attorneys for Plaintiff
                                      FEDERAL TRADE COMMISSION
20

21

22

23

24

25

26

27

28